# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

CIVIL ACTION NO. 4:13-CV-00136-JHM

CHERYL ROACH and
STEPHEN PHILIP ROACH, II                                    PLAINTIFFS

V.

LAURA HUGHES, WARNER CHILCOTT, PLC,
WARNER CHILCOTT SALES (US) LLC, and
WHEELS, LT                                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion in limine by Defendants, Laura Hughes,

Warner Chilcott Sales (US) LLC, and Wheels, LT, to exclude the expert witness testimony of

Laura Lampton [DN 24], a motion in limine by Defendants to limit the scope of the expert

witness testimony of Dr. Randy Joe Cox [DN 25], a motion in limine by Plaintiffs, Cheryl Roach

and Stephen Phillip Roach, II, to limit the scope of the expert witness testimony of Dr. David

Shraberg [DN 29], and a motion in limine by Plaintiffs to limit the scope of the expert testimony

of Dr. Kathleen Rodowicz [DN 45].  Fully briefed, these matters are ripe for decision.  For the

following reasons, the Motion to Exclude the Opinion Testimony of Laura Lampton is **DENIED**;

the Motion to Limit the Scope of Dr. Randy Joe Cox's Opinion Testimony is **DENIED**; the

Motion to Limit the Scope of Dr. David Shraberg's Opinion Testimony is **GRANTED in part**

**and DENIED in part**; and the Motion to Limit the Scope of Dr. Kathleen Rodowicz's Opinion

Testimony is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

This case arises out of an automobile collision on November 7, 2012 between Plaintiff

Cheryl Roach and Defendant Laura Hughes.  Ms. Roach alleges personal injury as a result of the

collision; specifically, she claims to have sustained traumatic brain injury, injury to the left brachial plexus, and other injuries. Plaintiff Stephen Philip Roach, II, joins in the action to assert a claim for loss of consortium. The case was originally filed in Daviess County Circuit Court, and Defendants removed the case on diversity jurisdiction grounds on December 23, 2013. (See Removal Notice [DN 1].)

## II. STANDARD OF REVIEW

The parties each seek to exclude or limit the opinion testimony of expert witnesses on the grounds that all or a portion of their opinions do not satisfy the standards of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. The Supreme Court has identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or

has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. This gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire, 526 U.S. at 147.

Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (citation and internal quotation mark omitted). Generally, any weakness in the underlying factual basis bears on the weight, as opposed to the admissibility, of the evidence. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008).

## III. DISCUSSION

Defendants seek to exclude or limit the opinion testimony of two individuals designated by Plaintiffs as expert witnesses: (1) Ms. Laura Lampton [DN 24] and (2) Dr. Randy Joe Cox [DN 25]. Plaintiffs seek to exclude or limit the opinion testimony of two individuals designated by Defendants as expert witnesses: (1) Dr. David Shraberg [DN 29] and (2) Dr. Kathleen Rodowicz [DN 45]. The Court addresses each motion in turn.

## A.  Laura Lampton [DN 24]

Defendants seek to exclude the expert opinions and testimony of Laura Lampton, R.N., B.S.N., C.R.R.N., C.N.L.C.P. Ms. Lampton is a registered nurse and certified life care planner hired by Plaintiffs to prepare a life care plan for Plaintiff Cheryl Roach. Ms. Lampton offers opinions regarding the future costs that Ms. Roach will likely incur as a result of the subject motor vehicle accident. Ms. Lampton bases these opinions, and the life care plan she developed

for Ms. Roach, on the recommendations of medical providers regarding Ms. Roach's care, her own education, training, and experience, the resources available in the local community, the costs of those resources, and how treatments are provided.  Defendants argue that Ms. Lampton's opinions and life care plan should be excluded because they do not meet any of the requirements for expert opinion testimony under Rule 702 and <u>Daubert</u>.   The Court addresses each requirement in turn.

### 1.  *Qualifications*

Defendants first argue that Ms. Lampton's testimony should be excluded because she is unqualified to testify regarding Ms. Roach's damages.  Defendants contend that Ms. Lampton is unqualified because she "has no scientific, technical, or other specialized knowledge in interpreting the prognoses of medical providers, in determining the cost of domestic servants, or in adding up columns of dollar figures."  (Defs.' Reply Supp. Mot. Exclude Op. Test. of Laura Lampton [DN 41] 3.)  Plaintiffs contend that Lampton is qualified as a life care planner, which is the specific field about which she proposes to testify.  Plaintiffs cite <u>Oaks v. Wiley Sanders Truck Lines, Inc.</u>, No. CIV.A. 07-45-KSF, 2008 WL 4180267 (E.D. Ky. Sept. 8, 2008), where the district court found that "Ms. Lampton is qualified to testify about life care plans by her education, training and experience."  <u>Id.</u> at *4.  Plaintiffs cite Ms. Lampton's qualifications as: a bachelor of science degree in nursing; certification as a Registered Nurse; certification as a Nurse Life Care Planner, through the American Association of Nurse Life Care Planners ("AANLCP"); numerous presentations on life care planning; and continuing education on life care planning.  (<u>See</u> Pls.' Resp. to Defs.' Mot. Exclude Op. Test. of Laura Lampton [DN 34] 4–5.)  Additionally, Plaintiffs cite Ms. Lampton's work at Vocational Economics, Inc., where she has worked for the past thirteen years, preparing approximately 700 to 800 life care plans and testifying in court

approximately eighty to eighty-five times regarding life care plans that she has prepared.  Based on her education, training, and experience, the Court finds that Ms. Lampton is qualified to provide expert opinion testimony about Plaintiff Cheryl Roach's life care plan and regarding the future costs of Ms. Roach's medical care and expenses.  See Oaks, 2008 WL 4180267, at *4 (finding Ms. Lampton "qualified to testify about life care plans by her education, training and experience"); State Farm Fire & Cas. Co. v. Bell, 30 F. Supp. 3d 1085, 1108 n.8 (D. Kan. 2014) (finding same); see also M.D.P. v. Middleton, 925 F. Supp. 2d 1272, 1275–76 (M.D. Ala. 2013) (finding life care planner qualified to provide testimony as to future care of injured plaintiff and cost of such care).

### 2. *Relevance*

Next, Defendants argue that Ms. Lampton's opinion testimony should be excluded as irrelevant.  An issue for the jury to determine in this case is the amount of compensation that Plaintiff Cheryl Roach should recover for future medical care and expenses as a result of the subject accident.  Defendants contend that Ms. Lampton's testimony is irrelevant because Ms. Lampton is "unable to discern between costs related to the accident and costs unrelated to the accident."  (Defs.' Mem. Supp. Mot. Exclude Op. Test. of Laura Lampton [DN 24-1] 10–11.)  The Court rejects this argument.  Ms. Lampton's life care plan, as well as her deposition, shows that her opinions regarding the future medical needs and the cost of that care are related to the accident that is the subject of this action.  Ms. Lampton reviewed the recommendations and opinions of multiple treating medical providers on the type and extent of medical care that Ms. Roach will require in the future, obtained the costs of such care in the local community, and developed opinions regarding an overall life care plan for Ms. Roach and the costs associated

with such plan. The Court finds that Ms. Lampton's opinion testimony is relevant to the issue of damages and will assist the jury in determining the amount of future medical expenses.

### 3. *Reliability*

Defendants' primary contention is that Ms. Lampton's testimony should be excluded because it does not meet the requirements of "reliability" under Rule 702 and Daubert.

First, Defendants argue that Ms. Lampton's methodology does not meet the classic reliability factors such as having been tested, having been subject to peer review, and having an assessed rate of error. Plaintiffs respond that Defendants' argument is the exact type of analysis of Ms. Lampton's opinions that the Supreme Court condemned in Kumho Tire. As explained in Kumho Tire, the classic reliability factors are "helpful, not definitive." Id. at 151. The Sixth Circuit has stated that the "test of reliability is 'flexible,'" In re Scrap Metal, 527 F.3d at 529 (quoting Kumho Tire, 526 U.S. at 150), and "that the Daubert factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony,'" id. (quoting Gross v. Commissioner, 272 F.3d 333, 339 (6th Cir. 2001)). Here, the factors relied upon by Defendants are not "reasonable measures" of the reliability of Ms. Lampton's methodology. Accordingly, those factors are not the measures that the Court applies to decide the reliability of Ms. Lampton's methodology and testimony.

The Court finds that the principles and methodology utilized in the life care planning field are reasonable measures of reliability of Ms. Lampton's methodology and opinions. See Block v. Woo Young Med. Co. Ltd., 937 F. Supp. 2d 1028, 1048 (D. Minn. 2013); Oaks, 2008 WL 4180267, at *4. Ms. Lampton followed the standards of the AANLCP in developing Ms. Roach's life care plan and based her opinions on sufficient facts and data, including Ms. Roach's medical records, the opinions and recommendations of Ms. Roach's multiple treating medical

providers, her consultation with Ms. Roach, and her own research on Ms. Roach's condition. Accordingly, the Court find that Ms. Lampton's methodology is reliable "because she followed the procedures utilized in her field of expertise to develop the life care plan." Oaks, 2008 WL 4180267, at *4.

Second, Defendants argue that Ms. Lampton's opinions regarding the cost of Ms. Roach's future needs are unreliable because they are a mere assimilation of hearsay. The Court rejects this argument as well. An expert may rely on otherwise inadmissible hearsay to form opinions so long as it is the type of material that experts in the particular field reasonably rely on. See Fed. R. Evid. 703. Life care planners reasonably rely on information from medical records, plaintiffs' treating physicians, and meetings with plaintiffs. See, e.g., Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 170–71 (1st Cir. 2005); Bell, 30 F. Supp. 3d at 1108; Oaks, 2008 WL 4180267, at *4; North v. Ford Motor Co., 505 F. Supp. 2d 1113, 1119 (D. Utah 2007). Accordingly, the Court finds that Ms. Lampton's opinions have an adequate basis within the meaning of Rules 702 and 703.

Defendants also challenge Ms. Lampton's inclusion in her life care plan of costs for home assistance for Ms. Roach because they contend the inclusion lacks sufficient foundation and is otherwise too speculative. "An admissible expert's opinion, it is clear, 'must be supported by more than subjective belief and unsupported speculation.'" Graham v. Am. Cyanamid Co., 350 F.3d 496, 510 (6th Cir. 2003) (quoting McLean v. 988011 Ontario Ltd., 224 F.3d 797, 800–01 (6th Cir. 2000)). Rule 702 requires that expert testimony be based on sufficient underlying "facts or data." "The term 'data' is intended to encompass the reliable opinions of other experts." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Ms. Lampton testified that the portion of the life care plan for home assistance is grounded in medical opinions

and recommendations from Ms. Roach's treating medical providers, as well as her interview of Ms. Roach.  (See Lampton Aff. [DN 34-2] 3–4; Lampton Dep. [DN 24-3] 41:2–43:4.)

Defendants' argument has failed in other courts.  In Smithers v. C & G Custom Module Hauling, 172 F. Supp. 2d 765 (E.D. Va. 2000), the court acknowledged that while the argument may have merit, "on balance [it] go[es] to the weight, not the admissibility of the proposed evidence," and denied the defendants' motion to exclude the testimony of the plaintiff's life care planning expert.  Id. at 773.  The same argument was also presented in Oaks v. Wiley Sanders Truck Lines, Inc., 2008 WL 4180267, where the court denied a motion to exclude Ms. Lampton's testimony.  See id. at *4.  In Oaks, the court reserved ruling on the issue of Ms. Lampton's testimony regarding costs for a home health nurse because there was insufficient evidence before the court as to whether a medical professional recommended the need for such a provider.  Id.  This Court will, as suggested by Plaintiffs in their brief, reserve ruling on this issue until trial.

For the reasons set forth above, the Court finds that Ms. Lampton is qualified to testify to her opinions and about the life care plan she prepared for Ms. Roach and that Ms. Lampton's opinions are both relevant and reliable.   Accordingly, Defendants' motion to exclude Ms. Lampton's testimony [DN 24] is **DENIED**.

### B.  Randy Joe Cox [DN 25]

Defendants move to limit the scope of the opinion testimony of Dr. Randy Joe Cox, M.D., Ms. Roach's treating neurologist.  Dr. Cox has been treating Ms. Roach for over two years (since January 23, 2013), has examined her multiple times, and has diagnosed her with a traumatic brain injury.  Dr. Cox has recommended or referred Ms. Roach to other doctors and

specialists for testing and evaluation.  Dr. Cox testified that he has thirty-four years' experience treating patients with traumatic brain injuries.  (See Cox Dep. [DN 25-3] 10:8–:10.)

Defendants argue that Dr. Cox's opinion testimony should be limited to neurology, the area in which he is qualified, and to those opinions set out in Dr. Cox's Rule 26(a)(2)(C) disclosure statement [DN 25-2].  Defendants seek an order that would prevent Dr. Cox from offering (and prevent Plaintiffs' counsel from eliciting) opinion testimony during trial regarding psychology, neuropsychology, and orthopedics.

The Court has reviewed Dr. Cox's statement and his deposition testimony and finds that Defendants mischaracterize Dr. Cox's testimony.  The Court finds that there was no lack of disclosure, that Dr. Cox is qualified to render the opinions he offers, and that Dr. Cox's opinions are sufficiently reliable and relevant.  Accordingly, Defendants' Motion to Limit the Scope of Dr. Randy Joe Cox's Opinion Testimony [DN 25] is **DENIED**.

### C.  David Shraberg [DN 29]

Plaintiffs move to limit the scope of the opinion testimony of Dr. David Shraberg, M.D. Dr. Shraberg is a neuropsychiatrist, retained by Defendants for purposes of litigation to perform a neuropsychiatric evaluation of Ms. Roach.  (See Shraberg Report [DN 29-2].)  Dr. Shraberg's report states: "[t]he purpose of this evaluation is to determine if Ms. Roach suffers any permanent neuropsychiatric impairments based on the premise that she sustained a traumatic brain injury associated with a motor vehicle accident that occurred on November 7, 2012."  (Id. at 1.)  The evaluation included a neuropsychiatric examination of Ms. Roach, as well as the administering of neuropsychological testing by Dr. Paul Ebben, medical/behavioral testing, and record review.  (Id.)

Plaintiffs contend that Dr. Shraberg should not be permitted to offer opinions at trial that he is not qualified to render. Plaintiffs additionally argue that Dr. Shraberg should not be permitted to offer opinions that are not included in his Rule 26(a)(2)(B) report. Plaintiffs object to seven "topics" of opinion testimony, four of which the Court finds relate to Ms. Roach's alleged injury to her left brachial plexus. The Court addresses each in turn.

### 1.   *Opinions Regarding Ms. Roach's Alleged Left Brachial Plexus Injury*

Plaintiffs first argue that Dr. Shraberg should not be permitted to testify regarding whether Ms. Roach suffered an injury to her left brachial plexus in the subject accident, or to matters relating to such an injury, such as the cause, extent, and appropriate treatment.

### a.   *Diagnosis*

Plaintiffs argue that Dr. Shraberg should be precluded from offering an opinion as to whether Ms. Roach suffered a brachial plexus injury because Dr. Shraberg has not examined Ms. Roach relative to a brachial plexus injury and has not provided an opinion in his report on this issue. Defendants counter that, while there is no mention of a brachial plexus injury in Dr. Shraberg's report, Dr. Shraberg performed a neurological examination of Ms. Roach, which he concluded was "normal," thus finding no evidence of a brachial plexus injury.[1] However, Dr. Shraberg testified in his deposition that he "did not do . . . a brachial plexus exam or anything of that sort" and when asked if any part of his evaluation was directed toward the existence or nonexistence of a brachial plexus injury, he responded that "[t]here was none in my evaluation that was directed to answering that specific question." (Shraberg Dep. [DN 54] 19:5–:6, 18:17–:18, 20:10–:16.) Dr. Shraberg additionally acknowledged that nothing in his report was directed

---

[1] Defendants' main focus in their brief appears to be arguing that Dr. Shraberg is qualified to diagnose a brachial plexus injury. (See Defs.' Resp. [DN 36] 2–3.) Plaintiffs contend that whether or not that is true, Dr. Shraberg did not examine or diagnose Ms. Roach for a brachial plexus injury, and therefore Dr. Shraberg should be precluded from offering opinions on whether Ms. Roach suffered a brachial plexus injury.

to the possible diagnosis of a brachial plexus injury.  (Id. at 20:17–:19.)  Dr. Shraberg further

stated, when asked whether he anticipated only offering testimony regarding the issues that were

addressed in his report:

> You know, I would only that if -- and this is kind of an ancillary peripheral
> question if in -- in that brachial plexus injuries generally have abnormal findings
> on the neurological exam.  If I was asked, was the neurological exam normal, I'd
> say yes.  But as far as making a diagnosis either that she has or excluding it, I
> didn't either.

(Shraberg Dep. [DN 54] 20:24–21:6.)

The Court finds that Dr. Shraberg may testify consistent with his deposition testimony.

Thus, Dr. Shraberg is permitted to testify that the results of the neurological exam he performed on

Ms. Roach were "normal" and that "brachial plexus injuries generally have abnormal findings on

the neurological exam."  However, Dr. Shraberg is precluded from testifying that Ms. Roach does

not have a brachial plexus injury or that Ms. Roach did not suffer a brachial plexus injury as a

result of the subject collision.  Accordingly, the Court **GRANTS** this aspect of Plaintiffs' motion.

### b.  *Physical Therapy*

Plaintiffs argue that Dr. Shraberg should not be permitted to offer opinions regarding

physical therapy provided to Ms. Roach for her alleged brachial plexus injury because no such

opinions were disclosed in Dr. Shraberg's expert report.  Plaintiffs make this argument even

though they have pointed to nothing to indicate that Dr. Shraberg intends to offer any such

opinions.  Defendants argue that Dr. Shraberg is qualified to offer opinions regarding the

reasonableness and necessity of physical therapy in which Ms. Roach has engaged for her

claimed brachial plexus injury.  (See Defs.' Resp. to Pls.' Mot. Limit Scope of Dr. David

Shraberg's Op. Test. [DN 36] 5.)  Defendants do not respond to Plaintiffs' argument that Dr.

Shraberg's report does not address or provide any opinions regarding Ms. Roach's left brachial

plexus injury or physical therapy.

Regardless of whether Dr. Shraberg may be qualified to offer such opinions, the Court finds no such opinions contained in his Rule 26(a)(2)(B) report.  Rule 26 requires an expert report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  As no opinions regarding physical therapy provided to Ms. Roach in relation to her alleged brachial plexus injury were offered in Dr. Shraberg's report, any such opinions are **EXCLUDED** on Rule 26 grounds.  See id.

   c.  *Orthopedic Treatment and Diagnosis*

Plaintiffs argue that Dr. Shraberg should not be permitted to testify regarding the treatment and diagnosis of Ms. Roach by an orthopedic surgeon because Dr. Shraberg is not qualified to render such opinions and because he does not offer any such opinions in his expert report.  Plaintiffs, in their expert witness disclosure [DN 15], disclosed Dr. Keith Moore, Ms. Roach's treating orthopedic surgeon.  Dr. Moore prepared a report pursuant to Rule 26(a)(2)(C), which includes his opinion: "Within a reasonable degree of medical probability, Mrs. Roach has a brachial plexus injury, resulting in pain and symptoms in Mrs. Roach's left shoulder which was caused by the trauma of the car wreck."  (Moore Report [DN 29-4].)

Defendants respond that Dr. Shraberg, as a "highly qualified neurologist" is "qualified to offer opinions regarding the cause, extent, and appropriate treatment of Ms. Roach's claimed brachial plexus injury," given that a brachial plexus injury is a nerve injury.  (Defs.' Resp. to Pls.' Mot. Limit Scope of Dr. David Shraberg's Op. Test. [DN 36] 6.)  Defendants argue that "[w]hile Plaintiffs are welcome to argue to the jury that an orthopedic surgeon is more qualified than a neurologist to render opinions regarding a neurological injury, such an argument does not affect the admissibility of Dr. Shraberg's opinions."  (Id.)  Defendants, again, do not respond to Plaintiffs' argument that Dr. Shraberg did not offer any such opinions in his report.

Again, regardless of whether Dr. Shraberg may be qualified to offer such opinions, Dr. Shraberg's report does not address or disclose opinion testimony regarding the treatment and diagnosis of Ms. Roach by an orthopedic surgeon.  Dr. Shraberg's report does not address the treatment or diagnoses of Ms. Roach by Dr. Moore, and Dr. Moore's report and records are not listed among the records reviewed by Dr. Shraberg in preparing his own report.  As no opinions regarding the treatment and diagnosis of Ms. Roach by an orthopedic surgeon were offered in Dr. Shraberg's report, any such opinions are **EXCLUDED** on Rule 26 grounds.  See Fed. R. Civ. P. 26(a)(2)(B)(i).  However, as stated earlier, Dr. Shraberg is allowed to offer his opinions that Ms. Roach's neurological exam was normal and that, generally speaking, a brachial plexus injury presents as an abnormal finding on a neurological exam.

### d. *Chiropractic Treatment and Diagnosis*

Plaintiffs also move to limit Dr. Shraberg from providing opinion testimony regarding chiropractic treatment and diagnosis.  Plaintiffs argue that Dr. Shraberg has not examined Ms. Roach for her neck or left shoulder brachial plexus injury, nor has he offered opinions in his report regarding chiropractic issues, methods, or treatment.  Plaintiffs make this argument even though they have pointed to nothing to indicate that Dr. Shraberg intends to offer any such opinions.  Defendants do not respond to this argument, instead merely arguing that Dr. Shraberg is qualified to offer opinions regarding the reasonableness and necessity of Ms. Roach's chiropractic treatment, citing Dr. Shraberg's Affidavit of February 23, 2015.

Regardless of whether Dr. Shraberg may be qualified to offer such opinions, no such opinions were contained within his report.  As no opinions regarding chiropractic treatment and diagnosis were offered in Dr. Shraberg's report, any such opinions are **EXCLUDED** on Rule 26 grounds.  See Fed. R. Civ. P. 26(a)(2)(B)(i).

**2.  *Opinions Regarding the Life Care Plan Developed by Ms. Lampton***

Plaintiffs argue that Dr. Shraberg should be precluded from providing opinion testimony regarding the subject of the report and opinions of Plaintiffs' life care planner, Ms. Lampton (i.e., the appropriate treatment and cost of treatment of a traumatic brain injury or brachial plexus injury) because Dr. Shraberg's report does contain any such opinions.  Defendants argue that Dr. Shraberg is qualified to comment on Ms. Roach's prognosis and future medical care and that Plaintiffs have been fully apprised of those opinions and will not be unfairly surprised at trial. Plaintiffs reply that they have no idea what Dr. Shraberg's opinions will be if they are anything other than the opinion that Ms. Roach "needs no treatment of any type, at any cost."  (Pls.' Reply Supp. Mot. Limit Scope of Dr. David Shraberg's Op. Test. [DN 46] 9.)

The Court has already delineated the scope of Dr. Shraberg's opinions regarding Ms. Roach's alleged brachial plexus injury—Dr. Shraberg is permitted to testify that the results of the neurological exam he performed on Ms. Roach were "normal" and that "brachial plexus injuries generally have abnormal findings on the neurological exam"; Dr. Shraberg is precluded from testifying that Ms. Roach does not have a brachial plexus injury or that Ms. Roach did not suffer a brachial plexus injury as a result of the subject collision.  Regarding the alleged traumatic brain injury, Dr. Shraberg's report and deposition offer only the opinion that Ms. Roach does not have such an injury.  The report offers no opinions regarding the appropriate treatment (and cost of that treatment) if Ms. Roach were to have a traumatic brain injury or a brachial plexus injury. Accordingly, as no opinions were offered regarding appropriate treatment and cost of treatment for the traumatic brain injury and left shoulder brachial plexus injury that Ms. Roach alleges, any such opinions—other than the opinion that Ms. Roach needs no treatment of any type, at any cost—are **EXCLUDED** on Rule 26 grounds.  See Fed. R. Civ. P. 26(a)(2)(B)(i).

### 3. *Opinions Within the Expertise of a Neuropsychologist*

Plaintiffs argue that Dr. Shraberg should not be permitted to testify regarding matters within the expertise of a neuropsychologist; specifically, that Dr. Shraberg be prevented from essentially "changing" the findings and observations of Dr. Ebben on neuropsychological matters by providing opinions in the area of neuropsychology, an area which Dr. Shraberg admits he is unqualified.   Plaintiffs' main contention for this argument is their interpretation of Dr. Shraberg's deposition testimony as an attempt to "cure" inconsistencies between the observations of Dr. Ebben and himself regarding Ms. Roach.   However, upon review of the entirety of Dr. Ebben's report, the Court finds that Dr. Shraberg's opinion testimony is consistent with Dr. Ebben's report.   (Compare Shraberg Dep. [DN 54] 131:2–133:10, with Ebben Report [DN 29-6] 5, 6–8.)   While Dr. Shraberg's opinions are inconsistent with results of some of the neuropsychology tests administered by Dr. Ebben, Dr. Shraberg's opinions are consistent with Dr. Ebben's own interpretation of those results, specifically, that the test results are unreliable and must be "viewed with caution" given the considerable variability and inconsistency within the examination and between examinations.   Thus, the Court finds that Dr. Shraberg has not exceeded his qualifications.   Therefore, this aspect of Plaintiffs' motion is **DENIED**.

### 4. *Opinions Regarding Testing, Treatment, or Assessments Performed or Provided by Dr. Naas, Medical Speech Pathologist*

Plaintiffs argue that, while Dr. Shraberg's opinion testimony regarding the existence of a speech disorder or brain injury is admissible, any opinion testimony of Dr. Shraberg's regarding the therapy, speech exercises, and other treatment that a medical speech pathologist provides to his patient should be precluded because such matters are beyond Dr. Shraberg's knowledge and expertise and because Dr. Shraberg's report does not address or provide any such opinions. Plaintiffs further argue that Dr. Shraberg should be precluded from testifying regarding the cost

of speech therapy which is reasonably necessary to date or in the future.  In response, Defendants focus exclusively on arguing that Dr. Shraberg is qualified to render opinions on the cause and extent of Ms. Roach's claimed speech disorder.  (See Defs.' Resp. to Pls.' Mot. Limit Scope of Dr. David Shraberg's Op. Test. [DN 36] 4–5.)

Dr. Shraberg's testimony on this matter seems to be, from his report and deposition, that Ms. Roach's speech disorder, if she has one, is not based on any brain injury.  (Shraberg Report [DN 29-2] 5–9; Shraberg Dep. [DN 54] 82:11–:19.)  Plaintiffs are not challenging Dr. Shraberg's qualifications to render that opinion.  However, Dr. Shraberg also seems to hold the opinion that there is no benefit to Ms. Roach's treatment and therapy with Dr. Naas and that such treatment is unnecessary because of the lack of brain injury that causes any speech disorder alleged by Ms. Roach.  (See Shraberg Dep. [DN 54] 82:20–83:8.)  This latter opinion is not, as Plaintiffs argue, outside the scope of Dr. Shraberg's knowledge and expertise.  Further, while the opinion is not expressly stated in Dr. Shraberg's report, the Court finds that it is consistent with the report, is a reasonable elaboration of the opinions contained in the report, and was in response to questioning by Plaintiffs' counsel.  See Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006) ("[Rule 26(a)(2)(B)] contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."); nCube Corp. v. SeaChange Int'l, Inc., 809 F. Supp. 2d 337, 347 (D. Del. 2011) (alteration in original) (quoting Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 585 F. Supp. 2d 568, 581 (D. Del. 2008)) ("When determining whether an expert's testimony is beyond the scope of the expert's written report, courts do not require 'verbatim consistency with the report, but . . . allow[] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.'").  Thus, the Court concludes that Dr. Shraberg's

opinions on this matter, as contained in his expert report and elaborated upon in his deposition, are admissible.

Accordingly, Dr. Shraberg is permitted to testify to his opinions that Ms. Roach does not suffer from a traumatic brain injury and that Ms. Roach does not have a speech disorder. He is also permitted to testify, consistent with his deposition testimony, to his opinion that the treatment and therapy with Dr. Naas is "unnecessary" and that there is no "benefit" to it. However, any opinions regarding the therapy, speech exercises, and other treatment that Dr. Naas has provided and will provide to Ms. Roach (and the costs of such treatment)—other than the opinion that no such therapy, exercise, and treatment are necessary—would be precluded as outside the scope of Dr. Shraberg's expert report and the scope of Dr. Shraberg's knowledge and expertise. Thus, Dr. Shraberg's opinions on this matter are limited to those noted in his expert report and deposition.

### D.  Kathleen Rodowicz [DN 45]

Plaintiffs seek to limit the scope of the opinion testimony of Dr. Kathleen Rodowicz, Ph.D., P.E. Dr. Rodowicz is a biomechanical engineer retained by Defendants to perform a biomechanical investigation of the subject motor vehicle accident. According to her *curriculum vitae*, Dr. Rodowicz holds a Ph.D. and B.S. in mechanical engineering, both from Drexel University. Dr. Rodowicz is a licensed professional engineer and is presently employed as a Managing Engineer with Exponent, Inc., a multi-disciplinary scientific and engineering consulting firm. According to Dr. Rodowicz's report, "[t]he purpose of this investigation was to evaluate the occupant kinematics and potential injury mechanisms for Cheryl Roach during the motor vehicle accident of November 7, 2012." (Rodowicz Report [DN 45-2] 1.) Plaintiffs move

to preclude Dr. Rodowicz from providing opinions (1) on medical causation and (2) regarding accident reconstruction.

### 1. *Medical Causation Opinions*

Dr. Rodowicz is expected to testify at trial that the forces generated upon Ms. Roach's body during the subject accident did not provide a mechanism to produce the traumatic brain injury or the brachial plexus injury claimed by Plaintiffs and, thus, that the subject accident did not cause those alleged injuries.   (See, e.g., Rodowicz Dep. [DN 55] 74:14–:16, 126:2–:3, 225:21–:24.)  Plaintiffs move to limit the scope of Dr. Rodowicz's testimony on the ground that, because she is not a medical doctor, she is not qualified to render medical opinions regarding the cause of Ms. Roach's injuries.  Defendants contend that Dr. Rodowicz is highly qualified as a biomechanical engineering expert and should be permitted to offer her opinions on the physical forces exerted during the accident and the effects of those forces on Ms. Roach's body, opinions that Defendants argue are within her area of expertise: biomechanics.

Although Dr. Rodowicz appears to be a highly qualified biomechanical engineer, she does not hold a medical degree.  An expert witness must be qualified to offer an opinion on the topic on which she seeks to testify.  As the Sixth Circuit observed in Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994), it "is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."  Id. at 1351.

The Sixth Circuit addressed whether a biomechanical engineer was qualified to testify about the causation of a particular injury in Smelser v. Norfolk Southern Railway Co., 105 F.3d 299 (6th Cir. 1997), abrogated on other grounds, Morales v. American Honda Motor Co., 151 F.3d 500, 515 & n.4 (6th Cir. 1998).  In Smelser, the vehicle in which the plaintiff-employee was

riding was struck in the rear by another vehicle.  Id. at 301.  The plaintiff claimed that his injuries were attributable not to the rear-end impact, but rather to a defective shoulder belt in the company-owned vehicle in which he was riding.  Id.  The trial court allowed the plaintiff's expert, a biomechanical engineer, to testify that the defective seat belt, and not the rear-end collision, caused the plaintiff's injuries.  Id.  On appeal, the Sixth Circuit reversed:

> [The biomechanical engineer's] opinion testimony goes beyond [his] expertise in biomechanics.  As he previously admitted, he was qualified to render an opinion that made use of his discipline's general principles, described the forces generated in the [subject accident], and spoke in general about the types of injuries those forces would generate.  [He] is not a medical doctor who had reviewed [the plaintiff]'s complete medical history, and his expertise in biomechanics did not qualify him to testify about the cause of [the plaintiff]'s specific injuries.  As this court observed in Berry, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."

Smelser, 105 F.3d at 305 (quoting Berry, 25 F.3d at 1351).

It is helpful to understand what a biomechanical engineer does.  As the court noted in Smelser, biomechanics "apply the principles in mechanics to the facts of a specific accident and provide information about the forces generated in that accident, explain how the body moves in response to those forces, and thus determine what types of injuries would result from the forces generated."  Id. at 305.  In the context of litigation, therefore, biomechanical engineers are qualified to render an opinion as to the forces generated in a particular accident and "how a hypothetical person's body will respond to those forces, but are not qualified to render medical opinions regarding the precise cause of a specific injury."  Id.  Because "each individual person has his own tolerance level," a biomechanical engineer may "testify only in general terms, i.e., that 'X' forces would generally lead to 'Y' injuries and 'Y' injuries are consistent with those the plaintiff claims to have suffered."  Id.

Defendants cite the unpublished opinion <u>Laski v. Bellwood</u>, No. 99-1063, 2000 WL 712502 (6th Cir. May 25, 2000), for their argument that Dr. Rodowicz is qualified to testify not only to the forces generated in the subject accident and the effects of those forces on a hypothetical person, but also to the effect of those forces on Ms. Roach's body, i.e., whether the subject accident provided a sufficient mechanism to cause Ms. Roach's alleged concussion and brachial plexus injury.   Because <u>Smelser</u> provides the applicable rule, the Court rejects Defendants' argument.

Other courts that have considered whether a biomechanical engineer is qualified to testify about the cause of an injury have ruled consistently with <u>Smelser</u>.  In <u>Morgan v. Girgis</u>, No. 07 CIV. 1960 (WCC), 2008 WL 2115250 (S.D.N.Y. May 16, 2008), the defendant sought to introduce at trial the testimony of a biomechanical engineer who was expected to testify that the accident in question would not have generated enough force to cause the injuries of which the plaintiff complained.  <u>Id.</u> at *1.  The plaintiffs sought to exclude that opinion on the ground that the opinion pertained to medical causation and the expert, as a biomechanical engineer, was not sufficiently qualified to give such an opinion.  The court found the reasoning of <u>Smelser</u> and <u>Laski</u> persuasive and concluded:

> [The biomechanical engineer] is clearly qualified to testify about the nature and amount of force generated by the accident in question and the observed effect of that force on a human body in comparable accidents.  In doing so he may offer comparisons between that force and the forces to which the human body is subject during other activities.  Such testimony would be relevant, helpful to the jury and within [the biomechanical engineer's] area of expertise.  *But because [the biomechanical engineer] is not a medical doctor, he may not testify as to whether the accident caused or contributed to any of plaintiffs injuries*.

<u>Morgan v. Girgis</u>, 2008 WL 2115250, at *6 (emphasis added); <u>e.g.</u>, <u>Wagoner v. Schlumberger Tech. Corp.</u>, No. 07-CV-244-J, 2008 WL 5120750, at *1 (D. Wyo. June 19, 2008) (finding both parties biomechanics experts unqualified to testify regarding the plaintiff's alleged brain injury

or as to the cause of that brain injury because they are medical opinions, but finding both qualified to "testify as to the forces involved in the low speed accident and how those forces may affect an individual or object"); <u>Bowers v. Norfolk S. Corp.</u>, 537 F. Supp. 2d 1343, 1377–78 (M.D. Ga. 2007) (finding biomechanical engineer qualified "to testify generally as to the effect of locomotive vibration on the human body and the typical injuries that may occur as a result of locomotive vibration," but not qualified to "offer an opinion as to whether the vibration in Plaintiff's locomotive caused Plaintiff's injuries[, because] [s]uch an opinion requires the identification and diagnosis of a medical condition, which demands the expertise and specialized training of a medical doctor"); <u>Shires v. King</u>, No. 2:05-CV-84, 2006 WL 5171770, at *3 (E.D. Tenn. Aug. 10, 2006) (holding that biomechanical engineer "clearly should be allowed to testify regarding the forces applied to plaintiff's head by the [accident], and how a *hypothetical* person's body would re-spond [sic] to that force," but that he cannot offer opinions "regarding the precise cause" of the plaintiff's injury).

Under <u>Smelser</u>, and the cases following it, this Court finds Dr. Rodowicz is qualified to testify regarding the forces generated by the subject accident, how a hypothetical person's body would respond to those forces, and what types of injuries would typically occur as a result of those forces. However, because Dr. Rodowicz is not a medical doctor, she may not testify as to Ms. Roach's claimed injuries or to whether the accident caused or contributed to any of Ms. Roach's injuries. See <u>Smelser</u>, 105 F.3d at 305. Thus, for example, Dr. Rodowicz's opinion that Ms. Roach's concussion, if Ms. Roach had one, could not have been or was not caused by the subject accident, is excluded. (See, e.g., Rodowicz Dep. [DN 55] 122:9–:10 ("The forces on her body in this accident did not result in a concussion injury."), 126:2–:3 ("My opinion is that a concussion did not occur or result from this accident."), :9–:10, :21–:23, 224:15–:17, :20–:21,

224:24–225:2.)  Likewise, Dr. Rodowicz's opinion that Ms. Roach's brachial plexus injury, if Ms. Roach has one, could not have been or was not caused by the subject accident is excluded. (See, e.g., Rodowicz Dep. [DN 55] 225:21–:24 ("The mechanism for brachial plexus injury was not present in the subject accident; and, therefore, the subject accident did not cause a brachial plexus injury to Mrs. Roach."), 122:11–:17, 128:10–:15; Rodowicz Report [DN 45-2] 9 ("The subject accident did not provide a mechanism to produce the brachial plexus injury described in Ms. Roach's medical records.").)  Accordingly, the Court **GRANTS** this aspect of Plaintiffs' motion.

### 2. *Accident Reconstruction*

Plaintiffs also argue that Dr. Rodowicz should not be permitted to testify on matters as to accident reconstruction because they are outside her area of expertise.  Plaintiffs argue that Dr. Rodowicz is unqualified to testify to the events and actions that transpire at a scene of a collision and regarding the methods, principles, applications, and practices that accident reconstructionists use in their discipline of reconstructing the manner in which a collision occurred.  Specifically, Plaintiffs seek to preclude Dr. Rodowicz from testifying on any matter involving reconstruction of a car accident, including speeds at the time of impact, angles of impact, and rotation of the vehicles upon impact.  Plaintiffs argue that Dr. Rodowicz is not qualified to testify on such matters because she has never investigated an actual motor vehicle collision, as opposed to crash simulations.  Plaintiffs additionally note that Dr. Rodowicz does not "specifically consider [herself] to be an accident reconstructionist," and has not "taken any training specific to accident reconstruction," and does "not have any certification specific to accident reconstruction." (Rodowicz Dep. [DN 55] 83:9–:11, :14–:15, 84:6–:7.)

Defendants argue that Dr. Rodowicz is qualified to offer reliable opinions regarding the movements of motor vehicles during a collision.  In her deposition, Dr. Rodowicz testified that she feels, as a licensed professional engineer, that she is qualified to do these reconstructions because being a professional engineer "includes the principles that are involved in accident reconstruction." (Id. at 83:3–:11, :18–:20.)  Dr. Rodowicz testified further that she "ha[s] written a paper involving the reconstruction of an accident or reconstruction of a testing that was done, and that [she has] certainly read papers and read textbooks regarding the principles for accident reconstruction." (Id. at 83:21–84:1.)

The Court finds that Dr. Rodowicz, by her education, knowledge, and training as a professional engineer, is qualified to offer her opinions as to matters such as the speeds of the vehicles at the time of impact, angles of impact, and rotation of the vehicles upon impact. Plaintiff's concerns over the strength of Dr. Rodowicz's qualifications go to the weight to be accorded to her testimony, not to its admissibility, and are proper matters for cross-examination. Accordingly, the Court **DENIES** this aspect of Plaintiffs' motion.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Exclude the Opinion Testimony of Laura Lampton [DN 24] is **DENIED**;

(2) Defendants' Motion to Limit the Scope of Dr. Randy Joe Cox's Opinion Testimony [DN 25] is **DENIED**;

(3) Plaintiffs' Motion to Limit the Scope of Dr. David Shraberg's Opinion Testimony [DN 29] is **GRANTED in part and DENIED in part**;

(4) Plaintiffs' Motion to Limit the Scope of Dr. Kathleen Rodowicz's Opinion Testimony

[DN 45] is **GRANTED in part and DENIED in part**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 29, 2015

cc: counsel of record