UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:13-CV-00136-JHM

CHERYL ROACH and
STEPHEN PHILIP ROACH, II                                                      PLAINTIFFS

V.

LAURA HUGHES, WARNER CHILCOTT, PLC,
WARNER CHILCOTT SALES (US) LLC, and
WHEELS, LT                                                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiffs' Objections [DN 78] to Magistrate Judge Brennenstuhl's Order entered June 19, 2015 [DN 75]. Fully briefed, this matter is ripe for decision. For the following reasons, Plaintiffs' objections are **SUSTAINED** and the Magistrate Judge's Order is **REVERSED**.

**I. STANDARD OF REVIEW**

Rule 72(a) of the Federal Rules of Civil Procedure permits a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery orders. Fed. R. Civ. P. 72(a). The district court reviews an order by a magistrate judge on a non-dispositive matter under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

**II. BACKGROUND**

This case arises out of a motor vehicle collision on November 7, 2012, between Plaintiff Cheryl Roach and Defendant Laura Hughes. Ms. Roach alleges personal injuries as a result of the collision; she claims to have sustained a traumatic brain injury, injury to the left brachial plexus, and other injuries. Plaintiff Stephen Philip Roach, II, joins in the action to assert a claim

for loss of consortium. This suit was brought against Laura Hughes, the driver of the other vehicle, Warner Chilcott Sales (US) LLC, Ms. Hughes's employer, and Wheels, LT, the owner of the vehicle Ms. Hughes was driving.

After the subject accident, Defendants employed at least two private investigators to conduct covert surveillance of Ms. Roach's activities. Plaintiffs filed a motion seeking Defendants' compulsion to produce the first investigator for a discovery deposition [DN 20]. On January 1, 2015, the Magistrate granted the motion [DN 22]. Upon taking the deposition, Plaintiffs learned that another investigator had also conducted surveillance of Ms. Roach. (See Matthew Dillander Dep. [DN 53] 134:17–:23.) Thereafter, Plaintiffs moved to compel Defendants' production of the first investigator's written report, the name of the second investigator and any video he or she may have produced [DN 33]. Defendants responded that the additional second surveillance did not result in any sightings of Ms. Roach and that they would not use the second surveillance video at trial nor call the second investigator as a witness [DN 43]. On April 14, 2015, the Magistrate granted the motion in part and denied it in part [DN 59]. Defendants were ordered to produce the first investigator's written report, with redaction of certain portions that contained protected opinion work product. The Magistrate denied Plaintiffs' motion to compel production of video surveillance conducted by the second investigator, along with disclosure of the second investigator's identity.

During a meeting between the Magistrate and the parties, Plaintiffs indicated that the Magistrate's Order of April 14, 2015 [DN 59] left unresolved the issue of whether Plaintiffs were entitled to know the entire duration of surveillance conducted by Defendants. The Magistrate instructed Plaintiffs to file a motion on that limited remaining issue, styled as a motion for reconsideration. Plaintiffs filed the motion for reconsideration [DN 64], arguing they are entitled

to know the full amount of time Defendants engaged in surveillance. By Order of June 19, 2015, the Magistrate found that the information sought was not relevant and denied Plaintiffs' request [DN 75].

Plaintiffs now object [DN 78] to the Magistrate's ruling in his Order of June 19, 2015 [DN 75] regarding the discoverability and relevance of the total duration of Defendants' surveillance of Ms. Roach. In essence, Plaintiffs argue that the Magistrate erred in determining the relevancy of the total duration of Defendants' surveillance of Ms. Roach. Plaintiffs contend that the total duration of Defendants' surveillance is factual information relevant to the surveillance video that Defendants intend to introduce at trial. Plaintiffs argue that as this is factual information, the work-product doctrine does not apply. Defendants argue that the amount of time it engaged in surveillance is not relevant to any issue in the case and, moreover, that requiring disclosure would intrude upon the protection afforded attorney trial strategy.

### III. DISCUSSION

Plaintiffs request the Court to order Defendants to produce information of the total duration of surveillance of Ms. Roach performed by or on behalf of Defendants, in the form of providing the dates and times on which surveillance was performed. The Court must determine whether the Magistrate erred in concluding that the total duration of Defendants' surveillance of Ms. Roach is not relevant under Rule 26(b)(1), and if so, whether that information is nevertheless protected from discovery by the work-product doctrine under Rule 26(b)(3).

#### A. *Relevancy under Federal Rule of Civil Procedure 26(b)(1)*

The Magistrate found that the duration of surveillance conducted by Defendants does not bear relevance in the instant action because the second surveillance did not produce any observation of Ms. Roach. The Magistrate's Order states:

> Plaintiffs know how long the first investigator conducted his surveillance. Plaintiffs argue that they need to know the full duration of surveillance so that they can demonstrate whether the first investigator's video misrepresents her activities. This argument misses the mark, however, because the second surveillance did not produce any observation of the Plaintiff. As Defendants note, the amount of time the second surveillance was unsuccessful neither tends to prove or disprove Mrs. Roach's claim of injury. She was not observed engaging in activity that was consistent with her claimed limitations, nor was she observed engaging in activity that was inconsistent with her claimed limitations. She simply was not observed at all. The undersigned is not persuaded that the amount of time in which Defendants engaged in the second, unsuccessful surveillance bears relevance under Fed. R. Civ. P. 401 and, therefore, the request for reconsideration is denied.

(Magistrate's Order June 19, 2015 [DN 75] 3.) This Court has a "definite and firm conviction that a mistake has been committed," United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), and thus finds that the Magistrate's Order is clearly erroneous.

The broad scope of discovery is governed by Federal Rule of Civil Procedure 26(b), which provides that "the parties may obtain discovery regarding any matter not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).[1] "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. "Relevant material for the purpose of discovery will encompass any matter that may bear upon, or reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case." Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing Minch v. City of Chicago, 213 F.R.D. 526, 527 (N.D. Ill. 2003)). Stated differently, "a request for discovery should be considered to be

---

[1] Rule 26(b)(1) provides:
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).

seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action." Id. (citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, 211 F.R.D. 658, 663 (D. Kan. 2003)). Additionally, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Notably, "[t]he federal courts, even after the amendment of Rule 26(b) in 2000, have continued to hold that, '[r]elevance for the purpose of Rule 26 is broadly construed.'" Invesco, 244 F.R.D. at 380 (quoting Jade Trading, LLC v. United States, 65 Fed. Cl. 188, 190–91 (Fed. Cl. 2005)).

"When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." Invesco, 244 F.R.D. at 380 (citing Horizon Holdings, LLC v. Genmar Holdings, Inc., 209 F.R.D. 208, 211–12 (D. Kan. 2002)).

The Court finds that Plaintiffs' discovery request is relevant to the claims and defenses alleged and is thus relevant under Rule 26(b)(1). Ms. Roach claims that she has suffered various injuries as a result of the subject motor vehicle accident and seeks damages based on those injuries. Certainly, then, the existence and extent of Ms. Roach's injuries are among the key issues a jury must decide in calculating her damages. See Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513, 517 (5th Cir. 1993). "In personal injury cases, surveillance materials are evidence of whether and to what extent a claimant was injured." Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 228 (D. Mass. 2006). As the existence and extent of injury is the very essence of Ms. Roach's claims in the case at bar, the surveillance materials, and the facts surrounding the creation of those materials, are clearly relevant. See id.; see also Baird v. Dolgencorp, L.L.C.,

5

No. 4:11 CV 1589 DDN, 2013 WL 3456757, at *1 (E.D. Mo. Feb. 8, 2013) (finding that plaintiff's discovery request, to depose investigator retained by the defendants who prepared surveillance videotapes in order to inquire about the circumstances of the recording of those videos, including the dates and times of the recordings and the existence of additional unproduced surveillance footage, was relevant to claims and defenses alleged in personal injury suit).

Defendants in personal injury cases secure surveillance materials in order to verify the extent and existence of a plaintiff's purported injuries and introduce them because they are powerful and immediate images that can cast doubt upon the plaintiff's claims. DiMichel v. S. Buffalo Ry. Co., 604 N.E.2d 63, 66 (N.Y. 1992), superseded by statute, N.Y. C.P.L.R. 3101 (McKinney), as recognized in Zegarelli v. Hughes, 814 N.E.2d 795 (N.Y. 2004). Thus, in such cases, "surveillance of the plaintiff can be a very important aspect of the defendant's case, if the surveillance tends to discredit the plaintiff's description of the extent and effects of his injuries." Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582, 586 (S.D. Tex. 1996). This is, presumably, what Defendants intend to use the first investigator's video for at trial.

While surveillance films are "highly relevant—perhaps . . . establish[ing] the most important facts in the entire case," Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, 150 (E.D. Pa. 1973), courts have long recognized the potential problems inherent in the presentation of video surveillance evidence at trial. See, e.g., Karr v. Four Seasons Mar., Ltd., No. CIV.A.02-3413, 2004 WL 797728, at *4 (E.D. La. Apr. 12, 2004) ("Courts and commentators have recognized the danger of manipulation or selective editing of surveillance videotapes, which can, for example, compress hours of uneventful surveillance into a short tape that shows a misleading period of physical activity or omits a plaintiff's reactions of pain during or extended rest after an activity. . . . Furthermore, the full extent of such surveillance might

6

actually corroborate, rather than impeach, a plaintiff's testimony of injury."); Smith, 168 F.R.D. at 586 (recognizing risk of "creatively-edited or otherwise manipulated surveillance evidence purporting to show that the plaintiff's injuries are not as severe as claimed"); DiMichel, 604 N.E.2d at 66 ("[F]ilm and videotape are extraordinarily manipulable media. Artful splicing and deceptive lighting are but two ways that an image can be skewed and perception altered. . . . Thus, while an accurate surveillance film may indeed prove to be a bombshell, the possibility of inaccuracy, given the nature of the medium, is very real."); see also Donna Denham & Richard Bales, The Discoverability of Surveillance Videotapes Under the Federal Rules, 52 Baylor L. Rev. 753, 766–70 (2000). As one court noted,

> the camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which recurs frequently. . . . . Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false.

Snead, 59 F.R.D. at 150. When context is not provided, there is increased potential for surveillance videos to misrepresent facts or not accurately reflect a plaintiff's true condition, as the surveillance video shown at trial may not tell the complete story. See Smith, 168 F.R.D. at 586 ("[A] truthful plaintiff may well be surprised by the content of a surveillance tape, given the photographer's ability to manipulate surveillance evidence, for example, by filming only the plaintiff's lifting of a heavy bag of groceries, but not the plaintiff's pain-riddled grimace."); Snead, 59 F.R.D. at 151 ("A man may know he cannot bend over without pain and therefore feel he is telling the truth when he says he never reaches down to touch the floor. Nonetheless, under some particular circumstances he may have done so and this may be the very incident which the camera has recorded."). And, "[w]hile this court does not presume any ill motive on the part of

Defendant's investigators, the potential introduction of surveillance materials at trial could well engender issues of exaggeration or distortion." Papadakis, 233 F.R.D. at 229.

Plaintiffs argue that the total duration of surveillance performed on Ms. Roach is relevant to the surveillance video that Defendants will introduce at trial. Defendants intend to introduce a surveillance video, containing a portion of the surveillance conducted by Defendants' first investigator, as evidence that they believe disproves or minimizes Ms. Roach's claim of injury. Plaintiffs want the jury to know the extent of surveillance that was required to obtain this sampling. Plaintiffs argue that "[t]he duration of time which it took to capture the evidence that Defendants intend to introduce could not avoid affecting the weight that the jury gives Defendants' evidence in deciding if Ms. Roach suffered injuries and, if so, their extent." (Pls.' Objs. [DN 78] 4.) Plaintiffs contend that if the jury is not informed of the total duration of surveillance performed on Ms. Roach, then the video—which the Court presumes purports to show Ms. Roach engaging in activities somehow inconsistent with her claim of injury—can be described as an example of an event that recurs frequently, thus potentially making that which purports to be a means to reach the truth distorted, misleading, or false. Snead, 59 F.R.D. at 150. Thus, Plaintiffs argue that the jury is entitled to know the full duration of Defendants' surveillance in order to weigh the accuracy of what is depicted on that portion of the surveillance video that Defendants anticipate using as evidence. Plaintiffs contend that the total duration of surveillance puts the surveillance video in the appropriate context and is relevant to the weight of the surveillance video evidence. The Court agrees and finds that the information sought by Plaintiffs is relevant to the surveillance video evidence Defendants purport to introduce at trial.

Additionally, the Court finds that the information sought by Plaintiffs is relevant for a substantive purpose. "While the Court realizes that surveillance films may often provide

compelling and persuasive impeachment of a plaintiff's evidence, surveillance evidence also provides substantive evidence of the extent of the plaintiff's injuries, often corroborating rather than impeaching the plaintiff's testimony." Smith, 168 F.R.D. at 586 (citing Chiasson, 988 F.2d at 517 (surveillance tape is, at least in part, substantive evidence tending to prove the extent of plaintiff's injuries)). Here, Plaintiffs seek the total duration of Defendants' surveillance of Ms. Roach. As the Magistrate noted, the Plaintiffs already know the duration of the first investigator's surveillance, and the Magistrate confirmed from his *in camera* review that the second investigator's surveillance resulted in no observations of Ms. Roach. Thus, in essence Plaintiffs are seeking discovery of the duration of the second investigator's unsuccessful surveillance. The Court finds that the lack of observation of Ms. Roach is relevant to the existence and extent of Ms. Roach's claim of injury. Defendants argue that the amount of time they engaged in surveillance is not relevant because it does not make any fact in the case more or less likely to be true. The lack of observation, contrary to Defendants' argument, tends to prove, or, at the very least, is consistent with, Ms. Roach's claim of injury. If the second investigator tried to conduct surveillance on Ms. Roach and was unsuccessful for, for example, a week, this fact has a tendency to make Ms. Roach's claim of injury more probable than it would be without that evidence. See Chiasson, 988 F.2d at 517 ("Evidence which would tend to prove or disprove [the plaintiff's claimed] losses must be considered 'substantive.'"). The information sought by Plaintiffs is thus relevant to her claims of injury, the very essence of the case. See Smith, 168 F.R.D. at 586 ("Because surveillance evidence is substantive evidence, a plaintiff clearly has a right to its discovery under Rule 26.").

### B. *Work-Product Doctrine*

Once Plaintiffs have shown that the materials in question are relevant or otherwise discoverable, the burden shifts to Defendants to show that the materials are encompassed within the work-product doctrine. See In re Powerhouse Licensing, LLC, 441 F.3d 467, 473 (6th Cir. 2006). "If that burden is not met, the court's inquiry ends and the documents must be produced." Id. In a diversity case, such as this one, "the court applies federal law to resolve work product claims." Id. at 472.

The Magistrate did not address whether the total duration of Defendants' surveillance of Ms. Roach was protected from discovery by the work-product doctrine, presumably because the Magistrate found the information was not relevant and therefore not discoverable. The Court, as discussed above, has found that the Magistrate erred in holding the information requested by Plaintiffs is not relevant, and therefore will address Defendants' contention that the information is protected by the work-product doctrine.

The Supreme Court established the work-product doctrine in Hickman v. Taylor, 329 U.S. 495 (1947), to prevent "unwarranted inquiries into the files and the mental impressions of an attorney," recognizing that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. at 510–11. The work-product doctrine, therefore, serves to protect "an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." In re Professionals Direct Ins. Co., 578 F.3d 432, 438 (6th Cir. 2009) (citing Hickman, 329 U.S. at 510–14).

The work-product doctrine is now codified in Federal Rule of Civil Procedure 26(b)(3), which provides:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for

> trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). The burden is on the discovery opponent to show that the materials are encompassed within the work-product doctrine. In re Powerhouse, 441 F.3d at 473.

Rule 26(b)(3) divides work product into two categories: "ordinary" work product and "opinion" work product. See In re Antitrust Grand Jury, 805 F.2d 155, 163 (6th Cir. 1986); Cobble v. Value City Furniture, No. CIV.A. 3:06-CV-631, 2008 WL 114937, at *2 (W.D. Ky. Jan. 10, 2008) (quoting Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000)). Ordinary work product is (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "Opinion work product" is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The work-product doctrine provides ordinary work product "only a qualified protection against discovery," United States v. Leggett & Platt, Inc., 542 F.2d 655, 660 (6th Cir. 1976), which may be overcome by the party seeking discovery showing that it (1) "has substantial need for the materials to prepare its case" and (2) "cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3)(A). Opinion work product, by contrast,

receives almost absolute protection from discovery. See Fed. R. Civ. P. 26(b)(3)(B); In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 294 (6th Cir. 2002).

Work-product protection "is limited to 'documents and tangible things.' It does not prohibit the discovery of underlying facts." Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 229 (D. Mass. 2006); see Roa v. Tetrick, No. 1:13-CV-379, 2014 WL 695961, at *5 (S.D. Ohio Feb. 24, 2014) (citations omitted) ("While the work product doctrine protects both tangible and intangible things and documents, it does not protect the disclosure of underlying facts, regardless of who obtained those facts."). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995). "Factual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions or other discovery." Eagle Compressors, Inc. v. HEC Liquidating Corp., 206 F.R.D. 474, 478 (N.D. Ill. 2002).

In the present case, Plaintiffs argue that they seek discovery of mere factual information about Defendants' investigation of Ms. Roach—the total duration of Defendants' surveillance of Ms. Roach—and, accordingly, the work-product doctrine does not apply. Defendants intermingle arguments that the total duration of the surveillance is not discoverable because it is opinion work product, which is entitled to near absolute protection, and because Plaintiffs have not made a sufficient showing of substantial need for the information, as would be required if the requested discovery was ordinary work product.

The Court finds that Defendants have not met their burden of establishing that the information sought by Plaintiffs' discovery request is encompassed within the work-product

doctrine. Plaintiffs' request seeks only the duration of Defendants' surveillance of Ms. Roach, a fact concerning the creation of work product, which is not protected by the work-product doctrine, Resolution Trust, 73 F.3d at 266. See Papadakis, 233 F.R.D. at 229 ("Thus, the observations of Defendant's investigators, as well as relevant information with respect to the mechanics of the surveillance, are fair game for inquiry."); Frieman v. USAir Grp., Inc., No. CIV. A. 93-3142, 1994 WL 675221, at *2–3 (E.D. Pa. Nov. 23, 1994) (finding that the date, subject, and activity of the defendant's surveillance were discoverable facts not protected by the work-product doctrine). Thus, the dates and times of Defendants' surveillance of Ms. Roach are discoverable facts not protected by the work-product doctrine. Accordingly, the Court finds that Plaintiffs' request seeks relevant information that is not otherwise protected from discovery, and will thus grant Plaintiffs' request. See In re Powerhouse, 441 F.3d at 473.

Defendants argue that requiring it to divulge the total duration of the surveillance of Ms. Roach requires it to reveal the opinions and thought processes of defense counsel to Plaintiff; therefore, the fact of the total duration of the surveillance is afforded "near absolute protection" from discovery. However, Defendants do not cite any cases in which the length of time an attorney decides to conduct surveillance has been characterized as opinion work product.[2] The court in Wegner v. Cliff Viessman, Inc., 153 F.R.D. 154 (N.D. Iowa 1994), rejected a similar argument made by the defendant in that case. Acknowledging that "[t]he decision to conduct such surveillance and the manner in which it should be conducted, its targets, and its timing, says something about how a defense attorney investigates and prepares a case for trial," the Wegner court concluded that "[i]t is simply too great a stretch to say, however, that opinion work product is also thereby revealed." Wegner, 153 F.R.D. at 159. Similarly, in Smith v. Diamond Offshore

---

[2] The cases Defendants cite are inapposite as they concern the scope of the work-product doctrine's protection of opinion work product in general, and not surveillance materials and/or the duration of investigation by an attorney.

Drilling, Inc., 168 F.R.D. 582 (S.D. Tex. 1996), the court rejected the defendant's argument that requiring it to divulge whether or not surveillance evidence exists required it to reveal its strategy and thought processes to the plaintiff and, therefore, that the fact of the existence or non-existence of surveillance was protected under the work-product doctrine. Smith, 168 F.R.D. at 587. The Smith court disagreed, saying:

> It may well be that the decision about if, when, or how surveillance of a plaintiff should be conducted does reveal something about how the defendant's attorney investigates and prepares a case for trial. However, not every action that reveals, to some minimal degree, an attorney's general strategy or approach to a case amounts to protected opinion work product. . . . Thus, while requiring the Defendant to disclose whether or not surveillance evidence exists may reveal the general strategy of the Defendant's attorney, "[i]t is simply too great a stretch to say, however, that opinion work product is also revealed." Wegner, 153 F.R.D. at 159.

Smith, 168 F.R.D. at 587. The Court agrees with Wegner and Smith, and concludes that although perhaps requiring Defendants to disclose the total duration of surveillance on Ms. Roach may reveal the general strategy of Defendants' attorney or may say something about how Defendants' attorney investigates and prepares a case for trial, "[i]t is simply too great a stretch to say, however, that opinion work product is also thereby revealed." Wegner, 153 F.R.D. at 159.

Defendants also argue, relying on Fletcher v. Union Pacific Railroad Co., 194 F.R.D. 666, 671 (S.D. Cal. 2000), that the total duration of Ms. Roach is not subject to discovery unless it is an essential element of the requesting party's prima facie case. (See Defs.' Resp. to Pls.' Obj. [DN 79] 7.) Defendants' argument misses the mark, however, because they have not established that the information sought is ordinary work product. The Fletcher case addressed a plaintiff's third motion to compel production of surveillance videos, in which the plaintiff, conceding the surveillance films were entitled to qualified work product immunity, argued that the films should be produced because he had demonstrated substantial need for them. 194

F.R.D. at 669. The portion of Fletcher that Defendants quote and rely on is part of the "substantial need" test, which that court applied to determine whether the plaintiff had overcome the qualified immunity provided to surveillance films by the work-product doctrine. See Fletcher, 194 F.R.D. at 671 (quoting 6 James Wm. Moore et al., Moore's Federal Practice § 26.70[5][c], at 26–221 to 26–222 (3d ed. 1999)) ("Professor Moore provides some guidance for determining the 'substantial need' required to overcome work product immunity. 'Substantial need . . . is demonstrated by establishing that the facts contained in the requested documents are essential elements of the requesting party's prima facie case.'"). As the Court has found that the total duration of the surveillance of Ms. Roach is *not* attorney work product, the Rule 26(b)(3)(A) test, of which "substantial need" is one prong, is not applicable. Also notable is that the Fletcher court, addressing a prior motion to compel in that case, "held that although surveillance material is protected work product, whether Defendant conducted surveillance and the dates on which any surveillance took place were not privileged," Fletcher, 194 F.R.D. at 668 (citing Tr. of Nov. 29, 1999, Hearing at 5–7, 30–32, 55), and accordingly "order[ed] Defendant to answer Fletcher's interrogatories regarding the date and location of its surveillance," id. (citing Tr. of Nov. 29, 1999, Hearing at 6, 55).[3]

### C. *Identity of the Second Investigator*

Upon reflection and in dealing with the present motion, the Court concludes that it erred in overruling Plaintiffs' earlier objections [DN 68] regarding the identity of the second

---

[3] Defendants also rely on Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148, 151–52 (E.D. Pa. 1973) for what they contend is a "frank rebuttal of Plaintiffs' argument." (See Defs.' Resp. to Pls.' Obj. [DN 79] 3–4.) However, Defendants reliance on Snead, like their reliance on Fletcher, is misplaced. The block quote Defendants include of the Snead opinion makes clear that the Snead court was discussing substantial need, a part of the standard for overcoming the protection afforded ordinary work product, see Fed. R. Civ. P. 26(b)(3)(A); Snead, 59 F.R.D. at 151–52 (stating that the court could "see no substantial need for plaintiff's counsel" to have the requested information). As the information sought by Plaintiffs here is mere underlying facts, not "documents and tangible things" protected by the work-product doctrine, the showing of substantial need under Rule 26(b)(3)(A) is not required.

investigator [DN 76]. The Magistrate ruled, based on his conclusion that the second investigator's video was protected work product, that the identity of the second investigator was likewise afforded work-product protection. (Magistrate's Order Apr. 14, 2015 [DN 59] 8.) However, the identity of the second investigator, just like the duration of Defendants' surveillance of Ms. Roach, is relevant nonprivileged factual matter that is not protected from discovery as work product. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including . . . the identity and location of persons who know of any discoverable matter."); Papadakis v. CSX Transp., Inc., 233 F.R.D. 227, 229 (D. Mass. 2006) ("Work-product protection . . . is limited to 'documents and tangible things.' It does not prohibit the discovery of underlying facts."). Accordingly, the Court finds the Magistrate's ruling that the identity of the second investigator is protected under the work-produce doctrine to be "clearly erroneous or contrary to law," and grants Plaintiffs' request to compel production of the identity of the second investigator.

      The Court does not conclude that it erred regarding the production of the second investigator's surveillance video. The Magistrate found that "the video taken by the second investigator is afforded work product protection because the Defendants do not intend to call the second investigator as a witness and they will not use the video for evidentiary purposes at trial" and was "not persuaded that the Plaintiffs have demonstrated substantial need for production so as to overcome the work product protection afforded this second video." (Magistrate's Order Apr. 14, 2015 [DN 59] 8.) The second investigator's surveillance video is a tangible thing prepared in anticipation of litigation by or for a party, see Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582, 586 (S.D. Tex. 1996) ("Obviously, surveillance evidence is gathered in anticipation of litigation and thus is generally protected as work product."), and thus is

encompassed within the work-product doctrine, subject to discovery only upon a showing by the party seeking discovery of substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3)(A). Some courts order blanket discovery of all surveillance videotapes, regardless of whether the tapes will be used at trial or not. See, e.g., Bachir v. Transoceanic Cable Ship Co., No. 98 CIV. 4625 JFK HBP, 1998 WL 901735, at *1 (S.D.N.Y. Dec. 28, 1998) (finding that "the better view is to permit discovery of all surveillance videotapes in defendant's possession" and concluding that "all surveillance videotapes should be produced, whether or not defendant intends to offer them at trial"); Smith, 168 F.R.D. at 586 (quoting Wegner v. Cliff Viessman, Inc., 153 F.R.D. 154, 159 (N.D. Iowa 1994)) (finding that "personal injury plaintiffs in general have a substantial need for any surveillance evidence when preparing their cases for trial" and that the undue hardship requirement was met because "surveillance evidence, available only from the one who obtained it, 'fixes information available at a particular time and place under particular circumstances, and therefore cannot be duplicated'"); Boyle v. CSX Transp., Inc., 142 F.R.D. 435, 437 (S.D. W. Va. 1992); Daniels v. Nat'l R.R. Passenger Corp., 110 F.R.D. 160, 161 (S.D.N.Y. 1986) ("The defendant must produce for plaintiff's inspection not only those portions of film or tape which it intends to introduce at trial, but all films or tapes of the plaintiff in its possession."); see also Papadakis, 233 F.R.D. at 228 ("Accordingly, to the extent that Defendant is in possession of any surveillance videotapes, that material will be ordered produced forthwith."). Other courts, like the Magistrate here, order the discovery of only those videotapes that the defendant plans to introduce as evidence at trial. See Fisher v. Nat'l R.R. Passenger Corp., 152 F.R.D. 145, 150–55 (S.D. Ind. 1993) (finding that the plaintiff had not shown substantial need for production of surveillance videos that would not be introduced at trial); Pioneer Lumber, Inc. v. Bartels, 673 N.E.2d 12, 17 (Ind. Ct. App. 1996) (same). As there is no

controlling precedent to guide the decision here, for neither the Sixth Circuit nor the Supreme Court has addressed the issue, and there is authority that supports the Magistrate's ruling regarding production of the second investigator's surveillance video, this Court does not find that the Magistrate's ruling was "clearly erroneous or contrary to law."

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Objections [DN 78] to the Magistrate Judge's Order entered June 19, 2015 [DN 75] are **SUSTAINED**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 3, 2015

cc: Counsel of Record
US Magistrate Judge Brennenstuhl