**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:13-CV-00136-JHM**

**CHERYL ROACH and**
**STEPHEN PHILIP ROACH, II**                                                       **PLAINTIFFS**

**V.**

**LAURA HUGHES, WARNER CHILCOTT, PLC,**
**WARNER CHILCOTT SALES (US) LLC, and**
**WHEELS, LT**                                                                      **DEFENDANTS**

**O**RDER

This matter is before the Court on various motions *in limine* filed by Defendants Laura Hughes and Warner Chilcott Sales (US) LLC [DN 109–113] and by Plaintiffs Cheryl Roach and Stephen Philip Roach, II, [DN 114–120]. Also before the Court are Defendants' objections to Plaintiffs' exhibit list and deposition designations [DN 107–108].

**I.  B**ACKGROUND

This case arises out of a motor vehicle collision on November 7, 2012, between Plaintiff Cheryl Roach and Defendant Laura Hughes. Cheryl alleges personal injuries as a result of the collision; she claims to have sustained a traumatic brain injury ("TBI"), injury to the left brachial plexus, and other injuries. Plaintiff Stephen Philip Roach, II, joins in the action to assert a claim for loss of consortium. This suit was brought against Laura Hughes, the driver of the other vehicle, Warner Chilcott Sales (US) LLC, Ms. Hughes's employer, and Wheels, LT, the owner of the vehicle Ms. Hughes was driving.[1]

Extensive discovery has been conducted. The parties have now filed various motions *in limine* and objections. The Court will consider them below.

---

[1] The Irish parent company, Warner Chilcott, PLC, was never served with process. Plaintiffs' claims against Wheels, LT, were dismissed with prejudice by this Court on March 19, 2015 [DN 48].

## II.   DISCUSSION ON MOTIONS *IN LIMINE*

### A. Motions *in Limine* filed by Defendants Laura Hughes and Warner Chilcott Sales (US) LLC [DN 109–113]

#### 1.   Exclude Evidence of Insurance and Indemnity [DN 109]

Defendants move the Court to exclude any evidence or argument regarding Defendants' insurance coverage, indemnification, or joint and several liability.  Plaintiffs respond that Defendants' motion should be denied to the extent it attempts to shelter the identity of Defendant Warner Chilcott.  The Court agrees.  Under Kentucky law, an employer is jointly and severally liable for the negligence of any employee who is acting within the course and scope of employment at the time of the negligence.  Bowen v. Gradison Constr. Co., 6 S.W.2d 481, 482–83 (Ky. 1928).  Defendants cite no case authority to support precluding a jury from being made aware of both the identity and relationship between Warner Chilcott and Laura Hughes.  In Williamson v. Schneider, 205 S.W.3d 224 (Ky. Ct. App. 2006), the Kentucky Court of Appeals held that it was reversible error to preclude the jury from knowing that the defendant-employer was a named party defendant in the negligence action.  Id. at 229–30 (citing Earle v. Cobb, 156 S.W.3d 257, 260–61 (Ky. 2004)).  Accordingly, Defendants' motion is **DENIED** in this respect.

Evidence of liability insurance, and the extent of that coverage, is not admissible evidence.  Fed. R. Evid. 411.  The Court **GRANTS** Defendants' motion in this respect. Plaintiffs do not object to Defendants' motion to that extent, but want to reserve the right to refer to such evidence if it becomes necessary on rebuttal.  Specifically, Plaintiffs want to reserve the right to offer liability insurance evidence should the motivation of Cheryl obtaining an attorney be undertaken by the defense at trial.  However, no argument will be permitted at trial regarding why Plaintiffs obtained a lawyer in this action.

**2. Exclude Evidence of Unrelated Acts [DN 110]**

Defendants move the Court to exclude evidence of Defendants' unrelated bad acts for the purpose of proving that Ms. Hughes acted negligently at the time of the subject motor vehicle accident. Defendants reference Defendant Hughes's deposition testimony that she was "T-boned" by a truck in Illinois prior to her employment by Warner Chilcott and that she received traffic citations many years earlier, and the fact that "other Warner Chilcott employees have probably been involved in accidents and/or received traffic citations." (Defs.' Mem. Supp. Mot. Exclude Evidence of Unrelated Acts [DN 110-1] 1.) Plaintiffs' respond that they do not intend to offer evidence that Hughes' received traffic citations as a teenager nor evidence regarding the wreck where she was allegedly "T-boned," and, to that extent, that they have no objection to Defendants' motion. (See Pls.' Resp. [DN 131] 1–2.) However, Plaintiffs request the Court to reserve ruling on evidence of other prior acts that could potentially become relevant at trial and admissible if offered for other purposes that may arise at trial. Thus, to the enumerated bad acts of Defendant Hughes, Defendants' motion is **GRANTED**; in all other respects, it is **RESERVED** for trial.

**3. Exclude Dr. Randall Benson's "DTI" Analysis & Opinion of Causation [DN 111]**

Plaintiffs have designated Randall Benson, M.D., a board-certified neurologist, as a treating-physician expert witness. Defendants seek to limit the testimony of Dr. Benson to prohibit any evidence of the use of diffusion tensor imaging ("DTI") and to exclude his opinion on the issue of causation. DTI is an imaging modality in the evaluation and assessment of normal and abnormal conditions of the brain.

To be admissible, expert opinion testimony must satisfy the conditions of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, "a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements." In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008). "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." Id. at 529 (internal citations omitted) (quoting Fed. R. Evid. 702). Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).

In determining whether testimony is reliable, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. In addition to the guidance provided in Rule 702, the Supreme Court in Daubert identified a non-exhaustive list of factors that may help the Court in assessing the reliability of a proposed expert's opinion. These factors include: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592–94. The Court's gatekeeping role is not limited to expert testimony based on scientific knowledge, but instead

extends to "all 'scientific,' 'technical,' or 'other specialized' matters" within the scope of Rule 702. Kumho Tire, 526 U.S. at 147. Whether the Court applies these factors to assess the reliability of an expert's testimony "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (citation omitted). Generally, any weakness in the underlying factual basis bears on the weight, as opposed to the admissibility, of the evidence. In re Scrap Metal, 527 F.3d at 530.

Defendants do not challenge Dr. Benson's qualifications or the neuropsychological testing he performed on Cheryl. Defendants' challenge focuses squarely on Dr. Benson's use of DTI. Defendants contend that the DTI analysis conducted by Dr. Benson is "too speculative and unreliable" to be presented at trial and would serve only to confuse and mislead the jury.

Based on a review of the evidence, the Court finds that Dr. Benson's DTI analysis is reliable. "DTI of the brain is a proven and well-established imaging modality in the evaluation and assessment of normal and abnormal conditions of the brain." (Hammar v. Sentinel Ins. Co., No. 08-019984 (Fla. Cir. Ct. 2010) [DN 133-22] ¶ 3.) DTI is a generally accepted diagnostic measure for TBI. (See, e.g., M.B. Hulkhower et al., A Decade of DTI in Traumatic Brain Injury: 10 Years and 100 Articles Later, 34 Am. J. Neuroradiology 2064, 2071 (2013) [DN 133-16] ("A unifying theme can be deduced from this large body of research: DTI is an extremely useful and robust tool for the detection of TBI-related brain abnormalities."). But see Hal S. Wortzel et al., Diffusion Tensor Imaging in Mild Traumatic Brain Injury Litigation, 39 J. Am. Acad. Psychiatry Law 511 (2011) [DN 111-3].) It has been tested and has been subject to peer review and publication. (See Hulkhower et al., supra.) It has been FDA approved and is a commercially marketed imaging modality that has been in clinical use for the evaluation of suspected head traumas including mild traumatic brain injury. According to Dr. Benson's affidavit, it has an

5

error rate of 0.4%. (Benson Aff. [DN 133-13] ¶ 11.) The Court also notes that DTI findings and testimony have been admitted by multiple courts. E.g., White v. Deere & Co., No. 13-CV-02173-PAB-NYW, 2016 WL 462960, at *4 (D. Colo. Feb. 8, 2016); Andrew v. Patterson Motor Freight, Inc., No. 6:13CV814, 2014 WL 5449732, at *8 (W.D. La. Oct. 23, 2014) (citations omitted) ("In sum, the evidence submitted shows DTI has been tested and has a low error rate; DTI has been subject to peer review and publication; and DTI is a generally accepted method for detecting TBI."); Ruppel v. Kucanin, No. 3:08 CV 591, 2011 WL 2470621, at *6–12 (N.D. Ind. June 20, 2011) (finding DTI to be a reliable method); Booth v. KIT, Inc., No. CIV. 06-1219 JP/KBM, 2009 WL 4544743, at *3–4 (D.N.M. Mar. 23, 2009) (denying motion to exclude expert testimony regarding findings from DTI).

Regarding causation, Defendants state that Plaintiffs may attempt to offer Dr. Benson's opinion that Cheryl's "diffuse axonal injury" was caused by the subject November 7, 2012 accident. Defendants contend that Dr. Benson has no reliable basis on which to form an admissible opinion regarding causation, as "the DTI cannot determine the cause of a condition, or even narrow down the time period of its origination." Fed. R. Evid. 702. However, DTI is not the only source of information Dr. Benson uses to diagnose TBI. Dr. Benson pairs the neuroimaging results with the neuropsychological assessment, which helps determine the cognitive deficiencies Cheryl suffers from, to determine the presence of brain damage. Dr. Benson readily admits that DTI, like any other imaging technique, "does not reveal the etiology of a particular pathology all by itself. DTI reveals damage to axons. DTI is used as other imaging modalities are used—to add important information regarding a differential diagnosis. In the case of mTBI, DTI is used in conjunction with clinical history, physical examination, and other MRI sequences/scans." (Benson Aff. [DN 133-13] ¶ 11.) Many of Defendants complaints

6

go to the weight that the jury may afford to the evidence offered, not the admissibility of the evidence, and can be adequately addressed through cross-examination. Accordingly, Defendants' motion is **DENIED**.

### 4. Exclude Evidence of Social Security Administrative Findings [DN 112]

Defendants seek to exclude any evidence or argument regarding any administrative findings or determinations regarding Plaintiff Cheryl Roach's claim for Social Security disability benefits. Defendants argue that they would be significantly prejudiced by evidence tending to show that a federal government administrative agency has found that Cheryl meets its regulatory definition of disability. Defendants contend that, in light of the complicated regulatory structure, definitions, and requirements of the Social Security Act, any mention of the disability benefits Cheryl is receiving would be far more prejudicial than probative and would unnecessarily confuse the jury. Further, Defendants contend that evidence or argument that an administrative agency, after an appeal by Plaintiffs' of an adverse ruling, determined that Cheryl meets the regulatory criteria necessary to be entitled to collateral source benefits would be unduly prejudicial to Defendants, who were not parties to the original administrative proceeding or the appeal. Plaintiffs state they seek to admit a public record from the Social Security Administration into evidence—the excerpt from the record is seven pages of the agency's findings and conclusions regarding whether or not Cheryl is disabled—which they contend is admissible evidence under the hearsay exception for public records, Fed. R. Evid. 803(8)(A)(iii).

Assuming for the purposes of discussion that the Social Security Administration's disability determination falls within Rule 803(8)(A)(iii), the Court finds that it is not relevant to the instant personal injury lawsuit, Fed. R. Evid. 402, and that even if it were, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, Fed. R. Evid. 403. "An SSA disability determination is of

7

dubious probative value in a personal injury action . . . . The lack of a meaningful adversarial process with respect to the cause, existence[,] and extent of a plaintiff's alleged disability renders the SSA's conclusions on that issue unreliable." Villanueva v. Zimmer, 69 A.3d 131, 142 (N.J. Super. Ct. App. Div. 2013). "[A]dmission of the [Social Security Administration's determination] of disability would result in the substantial possibility of unfair prejudice by making it extremely difficult for the jury to conduct an independent evaluation of relevant medical evidence bearing upon the nature and extent of [Cheryl Roach]'s injuries attributable to the underlying accident." Johnson v. Am. Honda Motor Co., No. CV 10-126-M-JCL, 2012 WL 1067103, at *2 (D. Mont. Mar. 28, 2012); accord Villanueva, 69 A.3d at 142 ("[D]efendant may suffer real and significant prejudice from the admission of the SSA disability determination. Introduction of the determination could cause the jury, despite the questionable utility of the determination with respect to causation, to inappropriately give weight, based on the fact that the SSA is a government agency, to its conclusions that plaintiff suffered a disability and was unable to work and to find, therefore, that this was due to defendant's negligence."); see also McConnell v. Hirschbach Motor Lines, Inc., No. 11-CV-00153-SDD-SCR, 2013 WL 5671054, at *1–2 (M.D. La. Oct. 15, 2013). Accordingly, Defendants' motion is **GRANTED**.

    **5. Exclude Evidence of Settlement Negotiations [DN 113]**

Defendants seek to exclude any evidence, argument, or inference, or mention-of the fact or amount of settlement negotiations or the settlement of the property damage claim that was negotiated between Defendants' insurance company and Plaintiffs. Plaintiffs did not respond to this motion. Thus, Defendants' motion to exclude evidence of settlement negotiations is **GRANTED**.

### B. Motions *in Limine* filed by Plaintiffs Cheryl & Stephen Roach [DN 114–120][2]

#### 1. Exclude Collateral Source Benefits (Medical Expenses Covered by Insurance and Social Security Disability Benefits) [DN 114]

Plaintiffs move the Court to exclude collateral source evidence, including Social Security Disability Benefits, Health Insurance, and Medicare coverage. See Burke Enterprises, Inc. v. Mitchell, 700 S.W.2d 789 (Ky. 1985); O'Byran v. Hedgepeth, 892 S.W.2d 571 (Ky. 1995). Under the collateral source rule, "a tortfeasor is not entitled to any credit against what he owes for payments of medical expenses or disability benefits paid by a collateral source to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source." Burke, 700 S.W.2d at 796. Accordingly, Defendants are not "entitled to introduce evidence at trial of such payments, except to corroborate other evidence, if there is any, that establishes malingering," id., or, if Plaintiffs "put into issue hardships and financial distress or implies financial distress caused by [D]efendant's action, [D]efendant may rebut this by showing that other financial means were available to [P]laintiff," Peters v. Wooten, 297 S.W.3d 55, 62 (Ky. Ct. App. 2009). Plaintiffs' motion *in limine* with respect to this issue is **GRANTED**.

#### 2. Exclude Defendants' Enumerated Proposed Exhibits [DN 115]

Plaintiffs object to, and move the Court to exclude from trial, four exhibits that have been identified by Defendants, DX14, DX15, DX16, DX17. All four exhibits are certified medical records of Plaintiff Cheryl Roach. Plaintiffs contend that these medical records should be excluded because they are not relevant and will confuse and mislead the jury. Fed. R. Evid. 401, 402, 403. Defendants respond that the medical records are relevant to the issues of causation and witness credibility. Defendants contend that the facts that Cheryl has been treated before the accident for the same symptoms she now attributes to the subject motor vehicle accident and that

---

[2] Plaintiffs' Motion *in Limine* to Exclude Defendants' Surveillance Video as a Sanction for Discovery Abuse and Non-Compliance with Court Order [DN 118] will be addressed in a separate order.

she has been "less than candid" about her past medical history are relevant to the factual issues in this case and are not confusing or misleading. The Court agrees and finds the exhibits are relevant and will not confuse or mislead the jury. Plaintiffs' motion to exclude DX14, DX15, DX16, and DX17 is **DENIED**.

### 3. Exclude Misdemeanor Convictions of Plaintiffs' Expert Witness, Physical Therapist Forrest L. (Ben) Waide [DN 116]

Plaintiffs move the Court to exclude the misdemeanor convictions of Plaintiffs' expert witness Forrest L. (Ben) Waide. Defendants have no objection to this motion. Accordingly, Plaintiffs' motion [DN 116] is **GRANTED**.

### 4. Objecting to Demonstrative Aids and Articles [DN 117]

Plaintiffs move the Court (1) to preclude Defendants from admitting into evidence DX31, DX38, DX48, DX49, and DX50, which Plaintiffs characterize as "demonstrative aids," and objects to the use of those exhibits without proper foundation and authentication, and (2) to prohibit Defendants' use of the articles identified as DX51, DX55, DX56, and DX57 at trial without proper foundation and authentication. Plaintiffs state they do not object to the use of the identified exhibits at trial as long as the proper foundations are laid and authentication requirements are met; however, Plaintiffs object to the taking of the diagrams, illustrations, and articles into the jury room.

Plaintiffs' objections to the scholarly articles (DX51, DX55, DX56, and DX57) are **RESERVED until trial**. Whether Defendants lay the proper foundation and authenticate the articles will take place, or not, during trial. All parties are expected to comply with the Federal Rules of Evidence, including laying the proper foundation for and authenticating exhibits.

Plaintiffs state that if the articles meet the learned treatise exception to the hearsay rule, then they can be read into evidence, but the articles themselves cannot be admitted into evidence.

Fed. R. Evid. 803(18). That exception provides that the following statements are not excluded by the rule against hearsay:

> **(18) Statements in Learned Treatises, Periodicals, or Pamphlets.** A statement contained in a treatise, periodical, or pamphlet if:
>
> > **(A)** the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
> >
> > **(B)** the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
> If admitted, the statement may be read into evidence but not received as an exhibit.

Fed. R. Evid. 803(18). Defendants state that they do not intend to offer the articles in their entirety as trial exhibits, as the articles are learned treatises and, as such, are not admissible *in toto*. Fed. R. Evid. 803(18). Instead, Defendants state they will utilize certain statements in those articles during the examination of expert witnesses with knowledge of the subject. This is permissible and within the scope of the rule. The articles may not be introduced as exhibits pursuant to Fed. R. Evid. 803(18), but statements from the articles, if admissible, may be read into evidence and used by the parties on examination of expert witnesses.

Plaintiffs' objections to the diagrams and illustrations (DX31, DX38, DX48, DX49, and DX50) will be discussed at the Final Pretrial Conference.

### 5. Preclude Inadmissible Evidence of Plaintiffs' 2004 Bankruptcy Filing [DN 119]

Plaintiffs move the Court to preclude evidence that Plaintiffs filed bankruptcy in 2004, as such evidence is irrelevant and inadmissible. Defendants agree that the fact that Plaintiffs applied for bankruptcy protection in 2004 and were adjudged bankrupt in 2008 is not relevant to the claims and defenses in this action. Thus, Plaintiffs' motion is **GRANTED** in part and the parties are precluded from introducing evidence at trial that Plaintiffs filed bankruptcy.

However, Defendants contend that Plaintiffs' motion and tendered order appear to be overbroad. Defendants state that they do not intend to offer evidence of Plaintiffs' bankruptcy unless Plaintiffs contradict specific sworn statements—such as statements regarding Cheryl Roach's income and employment history—they made in the course of that bankruptcy proceeding that are relevant to the issues in the instant action. Defendants request the Court to enter an order limiting the use of the information contained in Plaintiffs' bankruptcy file to the extent necessary to impeach Plaintiffs if they testify inconsistently with their prior statements. If Plaintiffs testify inconsistently with the information provided in the bankruptcy file and do not sufficiently explain the inconsistency, they open the door to questioning about their prior inconsistent statements. Those prior statements will be admissible as substantive evidence, Fed. R. Evid. 613, and any unrelated material in the document—including any reference to bankruptcy—will be redacted pursuant to Fed. R. Evid. 612(b). Thus, the parties are precluding from introducing evidence at trial that Plaintiffs filed bankruptcy, except that evidence of Plaintiffs' statements regarding Plaintiff Cheryl Roach's income and/or employment history that are set out in the United States Bankruptcy Court file may become admissible if Plaintiffs testify inconsistently with those statements during the trial of this action.

### 6. Exclude 1999 Job Application (DX 3), Evidence of Plaintiff Receiving Unemployment Insurance Benefits (DX 4), and Related Testimony [DN 120]

Plaintiffs move the Court to exclude Cheryl Roach's 1999 Job Application (DX3), evidence of Plaintiff receiving unemployment insurance benefits (DX4) and related testimony. The motion is **DENIED** in part and **GRANTED** in part.

Plaintiffs' motion to exclude DX3 is **DENIED**. Plaintiffs contend that the seventeen-year-old job application to a dental office is "remote evidence" not relevant to the claims and/or defenses in the present case and that the application will confuse and mislead the jury.

Defendants counter that DX3 is relevant and probative on Cheryl Roach's educational history, employment history, and credibility, as well as the credibility of other witnesses. Plaintiffs retained Linda Jones, a vocational expert, to offer her opinion on Cheryl Roach's employment and earning status. Ms. Jones's report states Cheryl's "Educational Attainment" as "High school graduate with two years of college. On-the-job training as a dental assistant." (See Vocational Assessment [DN 128-1] 2.) Among the list of information Ms. Jones reviewed in preparing the vocational assessment are the records from Lexington Dental Center, which includes Cheryl's handwritten employment application, in which Cheryl wrote Henry Clay High School under high school and that she attended the University of Kentucky for 2 ½ years. (See DX3 [DN 128-2] 1.) Defendants state they will offer evidence at trial that Cheryl did not graduate from high school and does not have two years of college, citing DX1 and DX2. The Court finds that DX3 is relevant and that the evidence will not confuse or mislead the jury.

Plaintiffs' motion to exclude DX4 and evidence and related testimony of Plaintiff Cheryl Roach receiving unemployment insurance benefits is **GRANTED**. Plaintiffs contend that, while Defendants can present evidence regarding Cheryl's work history and periods of employment and unemployment at trial, the fact that Cheryl received unemployment benefits in 2002 and 2011 is not relevant to this case and any purported relevance of unemployment benefits is greatly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The Court agrees.

Defendants counter that Cheryl Roach's true employment status and the terms under which she ended two jobs before the subject accident are relevant and probative on the disputed factual issues of her employment history and earnings history, as well as the issue of credibility of Cheryl Roach and her former employers. Defendants contend that "Plaintiffs would not be unduly prejudiced by allowing the jury to receive accurate, reliable information regarding the

13

terms of Cheryl Roach's departure from two previous jobs to contrast the version put forth by Plaintiffs. The certified records to which Plaintiffs objected establish that Cheryl Roach tried to return to both of those jobs, and that the employers would not re-hire her." (Defs.' Resp. [DN 128] 4.)

The Court agrees with Plaintiffs and finds that Cheryl Roach's receiving unemployment benefits in 2002 and 2011 is not relevant to this case, and that any relevance is outweighed by the danger of unfair prejudice. Accordingly, Plaintiffs' motion to exclude DX4 and evidence and related testimony of Plaintiff receiving unemployment insurance benefits is **GRANTED**.

### III. DISCUSSION OF OBJECTIONS [DN 107, DN 108]

The Court intends to discuss the majority of the Defendant's objections at the pre-trial conference as they relate to specific exhibits and the deposition designations; however, the Court is prepared to rule at this time on some matters raised by the objections.

**1. Medical records [PX2]**

Defendants object to Plaintiffs dumping over 2000 pages of medical records into evidence. Defendants' objection to PX2 is **SUSTAINED**. Certain parts of Plaintiffs' medical records are admissible as evidence if properly identified, authenticated, and relevant. Defendants do not challenge the authenticity of the records offered by Plaintiffs. Specific portions of Plaintiff Cheryl Roach's medical records may be utilized as necessary to establish a fact relevant to the jury's determination of a disputed fact. However, Plaintiffs cannot simply dump all Cheryl's medical records into the record; they must pare down these records and offer only the necessarily relevant ones.

### 2. Itemization and documentation of Plaintiff Cheryl Roach's medical expenses and medical bills [PX14]

Defendants' objection to Plaintiffs' Exhibit No. 14 is **OVERRULED**. Defendants argue that before showing or mentioning summaries or bills for medical expenses to the jury, Plaintiffs must present competent evidence that each of the expenses were medically necessary and were causally related to the subject collision. Defendants argue that Plaintiff's testimony alone is not sufficient to establish the admissibility of the medical records, but instead expert opinion is necessary. The Court disagrees. As this Court noted in Osborne v. Pinsonneault, No. CIV A 407CV-002-JHM, 2009 WL 1046008 (W.D. Ky. Apr. 20, 2009), "[t]he Kentucky Supreme Court has recognized that an automobile accident victim's medical bills are admissible 'without expert proof that they were necessary for and related to treatment for injuries caused by [the] accident.'" Id. at *1 (quoting Cincinnati Ins. Co. v. Samples, 192 S.W.3d 311, 318 (Ky. 2006) (citing Daugherty v. Daugherty, 609 S.W.2d 127, 128 (Ky. 1980) (noting the statutory presumption in KRS 304.39–020(5)(a) that any medical bill submitted is reasonable))). Thus, at trial, Plaintiff Cheryl Roach may testify that she received medical treatment from a medical provider related to the injuries she allegedly sustained in the collision and she can submit the bill she received from that medical provider. For these reasons, Defendants' objection is **OVERRULED**.

### 3. Excerpts of Plaintiff's Social Security Disability file from the Social Security Administration [PX20]

Defendants' objection to PX20 is **SUSTAINED**, in accordance with the Court's grant of Defendants' motion *in limine* to exclude evidence of Social Security administrative findings [DN 112].

### 4. Defendants' Objections to Photographs

Defendants object to a variety of exhibits that consist of photographs. Defendants' objections to PX9d, e, f, g, h, i, j, and k ("color copies photographs of the damage to Plaintiffs' Subaru Impreza") and PX9y and z (black and white photographs of and a diagram of the scene of the wreck) are **SUSTAINED**. Plaintiffs are instructed to redact all references to insurance claim information, including claim number and PDA assignment number.

Defendants' objections to PX9q, r, s, t, u, v, w, and x ("color photocopies" "of various views of Defendants' Ford Taurus and its parts) are **OVERRULED**. Defendants contend that these photographs are misleading and therefore inadmissible because they do not accurately depict the Ford Taurus driven by Defendant Hughes as it appeared following the accident. However, Plaintiffs contend that these photographs show the damage to the parts of the Ford Taurus that were evaluated by representatives of Property Damage Appraisers, who can testify to their authenticity, and that all of the photographs in PX8 comprise facts and data underlying the opinions of Defendants' expert Dr. Rodowicz. The Court finds that these photographs are not misleading.

Defendants objections to PX13a, b, and c,[3] PX44, PX45, PX46, PX51, PX56, and PX65, are **OVERRULED**. However, Plaintiffs are instructed to use *one* version of each photograph. There is no need for a color photo and a black and white photo of the same image. Further, Plaintiffs are to redact all references to insurance claim information, including claim number and PDA assignment number, on any photographs they offer at trial.

---

[3] Defendants object to PX13a, b, and c on the grounds that the photographs are duplicative of PX9 and inadmissible for the same reason. "They depict disassembled auto parts and contain insurance claim information."

### 5. Employment Letter and Lease [PX42, PX48, and PX49]

Defendants' objections to PX42, PX48, and PX49 are **SUSTAINED**.[4] The offer of an employment letter from Warner Chilcott to Laura Hughes is not relevant to any contested issue in the case, as Defendants have conceded the employer-employee relationship and that Warner Chilcott is vicariously liable for any negligence apportioned to Defendant Hughes. Likewise, PX48 and PX49, which establish the terms of the vehicle lease, are not relevant to any contested issue in the case. The introduction of these exhibits would serve only to clutter up the record.

### 6. Surveillance Evidence and Photographs of Matt Dillander taken by Plaintiff Cheryl Roach [PX19]

These objections are **SUSTAINED** in part. The Court will allow, as previously indicated, testimony related to the duration of the surveillance conduct by the Defendant in this case. (See also Mem. Op. & Order of Aug. 4, 2015 [DN 81].) However, Plaintiffs represent that Plaintiff Cheryl Roach, along with her family, friends, and medical providers, may testify as to whether the nature and extent of the surveillance that was performed by and through Defendants' agents caused Cheryl Roach increased mental pain and anguish. Plaintiffs contend that Mr. Dillander's presence, activities, and appearance to Cheryl Roach are directly at issue "given Plaintiff's claims for mental anguish due to the nature of the surveillance." (Pls.' Resp. to Defs.' Objs. to Pls.' Ex. List [DN 135] 20–21.) The Court disagrees.

The Court will not allow evidence regarding any alleged harassment or the impact of the surveillance on Ms. Roach. The damages recoverable and at issue in this case are those that flow from the subject-collision, not from the stress of this lawsuit. Any such damages would not be recoverable in the instant action and therefore any such evidence would be inadmissible.

---

[4] Defendants' Objections No. 48a, 48i, and 48j.

17

### 7. Expert Reports

The Court agrees with Defendants that expert reports prepared in anticipation of trial are generally inadmissible because they are considered hearsay. See Engebretsen v. Fairchild Aircraft Corp., 21 F.3d 721, 729 (6th Cir. 1994) (citing Fed. R. Evid. 702 & 703). However, there may be aspects of the reports that are admissible. For example, the data relied upon by the experts, if contained in the reports, may be admissible under Rule 703 to explain the basis for the expert's opinion and not as substantive evidence. See id. And if the reports contain charts or summaries, those aspects may be admissible under either Rule 1006 or Rule 611(a). See Bray, 139 F.3d at 1111–12. The Court, at this time, is not prepared to preclude use of any of such exhibits at trial without knowing the purpose for which the exhibits will be used. Accordingly, Defendants' objections to these exhibits are **RESERVED until trial**.

### 8. Scientific and Scholarly Articles

All objections to the use of learned treatises are **RESERVED until trial**. The learned treatise exception provides that the following statements are not excluded by the rule against hearsay:

> **(18) Statements in Learned Treatises, Periodicals, or Pamphlets.** A statement contained in a treatise, periodical, or pamphlet if:
>
> **(A)** the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
> **(B)** the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
> If admitted, the statement may be read into evidence but not received as an exhibit.

Fed. R. Evid. 803(18).

18

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion *in Limine* to Exclude Evidence of Insurance and Indemnity [DN 109] is **GRANTED in part** and **DENIED in part**. It is GRANTED as to evidence of insurance; it is DENIED as to references to Warner Chilcott.

**IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* to Exclude Evidence of Unrelated Acts [DN 110] is **GRANTED in part** and **RESERVED in part**. It is GRANTED as to the enumerated acts set forth in Defendants' Memorandum in Support; it is RESERVED in all other respects.

**FURTHER** that Defendants' Motion *in Limine* to Exclude Dr. Benson's "DTI" Analysis and Opinion of Causation [DN 111] is **DENIED**.

**FURTHER** that Defendants' Motion *in Limine* to Exclude Evidence of Social Security Administrative Findings [DN 112] is **GRANTED**.

**FURTHER** that Defendants' Motion *in Limine* to Exclude Evidence of Settlement Negotiations [DN 113] is **GRANTED**.

**FURTHER** that Plaintiffs' Motion *in Limine* to Exclude Collateral Source Benefits [DN 114] is **GRANTED**.

**FURTHER** that Plaintiffs' Motion *in Limine* to Exclude Defendants' Enumerated Proposed Exhibits [DN 115] is **DENIED**.

**FURTHER** that Plaintiffs' Motion *in Limine* to Exclude Misdemeanor Convictions of Plaintiffs' Expert Witness, Physical Therapist Forrest L. Ben Waide [DN 116] is **GRANTED**.

**FURTHER** that Plaintiffs' Motion *in Limine* Objecting to Demonstrative Aids and Articles [DN 117] is **RESERVED in part**.

**FURTHER** that Plaintiffs' Motion *in Limine* to Preclude Inadmissible Evidence of Plaintiffs' 2004 Bankruptcy Filing [DN 119] is **GRANTED in part**. The parties shall not introduce evidence of Plaintiffs' bankruptcy, except that evidence of Plaintiffs' statements regarding Plaintiff Cheryl Roach's income and/or employment history that are set out in the United States Bankruptcy Court file may become admissible if Plaintiffs testify inconsistently with those statements during the trial of this action.

**FURTHER** that Plaintiffs' Motion *in Limine* to Exclude 1999 Job Application, Evidence of Receiving Unemployment Insurance Benefits, and Related Testimony [DN 120] is **GRANTED in part** and **DENIED in part**. It is GRANTED as to the unemployment insurance benefits (DX4) and related testimony; it is DENIED as to the 1999 job application (DX3).

*[signature: Joseph H. McKinley]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 9, 2016

cc:   Counsel of Record